IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KIMBERLY W. CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV748 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kimberly W. Campbell ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on October 12, 2012, alleging a disability onset date of August 17, 2006 in both applications. (Tr. at 10, 180-87.)[1] Her applications were denied initially (Tr. at 59-82, 111-15) and upon reconsideration (Tr. at 83-110, 120-28). Thereafter,

---

[1] Transcript citations refer to the Administrative Record [Doc. #8].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 130-31.) Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing on November 10, 2015. (Tr. at 10.) At that time, she amended her alleged onset date to October 26, 2009. (Id.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her amended alleged onset date through July 1, 2016, the date of the administrative decision. (Tr. at 18-19.) On June 14, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from three severe impairments:

> anxiety disorder, affective disorder, and the residuals of right rotator cuff surgery.

(Id.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 13-14.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b), except no more than occasional reaching overhead with the right upper extremity; can reach in all other directions frequently; can perform simple, routine, and repetitive tasks involving no more than simple instructions and work-related decisions with few workplace changes; no work at a fixed production rate or pace; no interaction

5

with the general public; and no more than occasional interaction with supervisors or coworkers.

(Tr. at 14.) At step four of the analysis, the ALJ found that that Plaintiff's past relevant work exceeded her RFC. (Tr. at 17.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 17-18.)

Plaintiff now raises two related challenges to the ALJ's decision. Specifically, Plaintiff contends that the ALJ erred by (1) "failing to discuss Plaintiff's cervical spinal stenosis at any step" of the sequential analysis, and (2) "failing to perform a function by function assessment of Plaintiff's ability to lift," as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (See Pl.'s Br. [Doc. #14] at 1.) The Court has considered each of these contentions, but concludes that remand is not warranted for the reasons set out below.

A. Cervical Spine Stenosis

Plaintiff first challenges the ALJ's failure to included cervical spinal stenosis among Plaintiff's severe impairments at step two or consider the effect of this impairment at later steps of the sequential analysis. As an initial matter, the ALJ's omission of a severe impairment at step two does not, without more, necessitate remand. "As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23,

6

2014) (citations omitted).[4]  However, in the present case, Plaintiff contends that the ALJ's subsequent analysis after step two also failed to account for "effects of her cervical spine stenosis . . . on her ability to reach and lift." (Pl.'s Br. at 5.)

As set out above, in setting the RFC, the ALJ determined that Plaintiff could perform light work with further restrictions to "no more than occasional reaching overhead with the right upper extremity" and frequent reaching in all other directions. (Tr. at 14.) However, as noted by Defendant, the focus of the ALJ's decision was on Plaintiff's mental health concerns, since those impairments were the basis of her application. Specifically, Plaintiff's application was filed in October 2012, alleging a disability onset date of August 2006, later amended to October 2009, based solely on mental impairments. Plaintiff did not allege any physical impairments until several years later, almost two years after her application was filed, following a car accident in August 2014. In the medical record, Plaintiff attributes both her right shoulder injury and her neck pain to the car accident, and told her providers that she did not have neck or shoulder pain prior to the accident. (Tr. at 503.) At the hearing before the ALJ,

---

[4] Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

Rivera v. Astrue, No. CBD-12-1095, 2013 WL 450781, at *7 (D. Md. August 22, 2013).

7

Plaintiff testified regarding her right shoulder injury and her neck pain. When asked what treatment she had received for her cervical spine and how the treatment had worked, she testified that she had "gotten a lot of physical therapy for that," that the neurosurgeon was "trying to wait to see how that goes," and that she was using a home decompression device to get "some relief." (Tr. at 44-45.) Notably, in the ALJ's decision, although most of the ALJ's discussion related to Plaintiff's mental impairments, the ALJ specifically considered the motor vehicle accident, the use of the decompression device/mechanical traction, and the physical therapy, noting that Plaintiff's

> ER records from August 2014 indicate that she was rear-ended in her vehicle by another vehicle travelling at a low speed. They noted that Plaintiff had "minimal" damage to her rear bumper and the airbags did not deploy. Although the claimant underwent right shoulder surgery in December 2014, by January to February 2015 she reported that her right shoulder pain, at its worst, was 1-4/10. Her physical therapy records also noted that she had met all goals by this time except for with regard to strength. From April to May 2015, she rated her improvement since beginning treatment as 70 to 75%. She rated her level of pain as 1/10. Her treatment records noted good relief with cervical mechanical traction with no pain complaints after therapy. Lastly, in June 2015, [Plaintiff] was discharged from physical therapy after having met all goals. Overall this evidence shows good improvement with physical therapy with mild to moderate pain levels.

(Tr. at 16.) This discussion includes both Plaintiff's right shoulder injury and her cervical spine issues, both of which were treated during physical therapy, and both of which Plaintiff linked to the car accident. As set out in the decision, the ALJ noted that in April and May 2015, Plaintiff rated her improvement as 70 to 75%. (Tr. at 16.) This is specifically reflected in the medical record with regard to her cervical spine as a perceived improvement of 75% on May 8, 2015, May 13, 2015, and May 19, 2015. (Tr. at 562, 559, 555.) The ALJ also noted that she rated her level of pain as 1/10. (Tr. at 16.) The medical record reflects that with regard to her

8

cervical spine, Plaintiff rated her level of pain as 1/10 on May 8, 2015, and May 19, 2015. (Tr. at 562, 555.) The ALJ then noted that Plaintiff's "treatment records noted good relief with cervical mechanical traction with no pain complaints after therapy." (Tr. at 16.) The medical records reflect that Plaintiff's cervical spine issues were treated with manual and mechanical traction, first at physical therapy appointments and then with a home decompression unit provided to Plaintiff. (Tr. at 576, 566, 564, 562, 557.) The medical records further reflect "no pain complaints after therapy" using the mechanical traction. (Tr. at 16, 576, 561, 557.) Finally, the ALJ noted that Plaintiff was discharged from physical therapy having met all goals. (Tr. at 16, 551.) Specifically as to her cervical spine, the goal was to reduce her pain at its worst to 3/10 (Tr. at 592), and by June 2015, Plaintiff reported "intermittent cervical pain" that was 2/10 at its worst and 0/10 currently. (Tr. at 549, 553.) She reported a 90% improvement in symptoms with therapy. (Tr. at 549.) In addition, Plaintiff had 5/5 bilateral upper extremity shoulder strength and cervical and shoulder ranges of motion within functional limits. (Tr. at 16, 550-51, 553.) Plaintiff also reported "getting good relief with the home traction unit" and planned to continue its use on her own. (Tr. at 549, 551.) Her prognosis was good. (Tr. at 553.) The ALJ then concluded that "[o]verall, this evidence shows good improvement with physical therapy with mild to moderate pain levels." (Tr. at 16.) This conclusion is amply supported by the evidence in the record with regard to both Plaintiff's right shoulder injury and Plaintiff's cervical spine.[5] Thus, the ALJ considered and analyzed the evidence regarding

---

[5] Other evidence in June 2015 similarly reflects "some neck pain" and "some intermittent radicular symptoms" with 90% range of motion, some tenderness, and normal strength, and with no recommendation for surgery, and instead a recommendation for "home therapy which she is doing." (Tr. at 639-40.) Similarly, an evaluation with a physician's assistant in April 2015 reflects that with respect to her neck, Plaintiff had "normal range of motion and full passive range of motion without pain," with some tenderness. (Tr. at 651.) She was referred

9

Plaintiff's cervical spine impairment, and the ALJ's conclusion is supported by substantial evidence.

Moreover, despite Plaintiff's assertion that her cervical spine stenosis impacted her ability to reach and lift, she fails to suggest what, if any, reaching or lifting limitations her cervical spine impairment would require beyond those already included in the RFC. None are apparent in the record. As noted above, the ALJ found that Plaintiff's "treatment records noted good relief with cervical mechanical traction with no pain complaints after therapy," and that, "in June 2015, [Plaintiff] was discharged from physical therapy after having met all goals." (Tr. at 16.) At the hearing, Plaintiff was asked about her rotator cuff injury and how she had been since the surgery, and she testified that she "can't pick [up] more than about ten pounds, nothing over my head, reaching to pull something down takes both hands or help." (Tr. at 44.) Plaintiff did not testify to any other lifting or reaching restrictions as a result of her cervical spine issues, and the ALJ addressed Plaintiff's lifting and reaching restrictions in setting the RFC. In short, the record fails to establish any limitations stemming from Plaintiff's cervical condition, let alone restrictions beyond the light work and limited reaching included in her RFC assessment.

For all of these reasons, the Court concludes that the ALJ sufficiently addressed the evidence and the issues to allow for meaningful judicial review, and the ALJ's conclusions are supported by substantial evidence in the record.

B. Function-by-Function Assessment

---

for physical therapy, and the results of that physical therapy are addressed in the ALJ's decision as set out above. (Tr. at 652.)

In a related argument, Plaintiff next contends that the ALJ failed to perform a function-by-function assessment "of Plaintiff's contested and relevant ability to lift." (Pl.'s Br. at 1.) By characterizing her lifting ability as "contested," Plaintiff attempts to liken her case to Mascio, 780 F.3d at 636-37. However, as Defendant emphasizes, in Mascio,

> the Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two RFC assessments, which contained relevant conflicting evidence regarding the claimant's weight lifting abilities. Here there were no opinions and, thus, no conflicting opinions. In fact, as the record indicated, [Plaintiff's] specialist and treatment providers did not restrict her lifting.

(Def.'s Br. [Doc. #16] at 17) (internal citation omitted). Although Plaintiff testified that she could lift no more than 10 pounds, she points to no evidence supporting this assertion, nor does she challenge the ALJ's finding that her testimony was less than fully credible.

Moreover, the ALJ acknowledged that Plaintiff continued to experience mild to moderate pain and reduced strength following her right shoulder surgery in December 2014. (Tr. at 16.) However, as discussed above, by the time Plaintiff was discharged from physical therapy in June 2015 "having met all goals," she reported minimal, intermittent pain and exhibited full strength and a functional range of motion in both upper extremities. (Tr. at 16, 549-51.) Despite the lack of any objective evidence of limited lifting abilities, the ALJ limited Plaintiff to light work based on the history of shoulder and cervical impairments that had largely improved, with a specific limitation on reaching in light of the right shoulder impairment. (Tr. at 16-17.) The ALJ's decision includes discussion of Plaintiff's improvement with therapy following her car accident, and also notes her ability to "dress herself, perform some cooking and cleaning, take care of pets, use computers, and independently attend to activities of daily living." (Tr. at 13, 16.) Indeed, in her testimony, Plaintiff noted that with

11

respect to household chores, including cooking, cleaning and laundering, "light stuff in the house isn't too bad." (Tr. at 46.) Given the evidence in the record, the ALJ's analysis is sufficient to "build an accurate and logical bridge" from the evidence of Plaintiff's lifting abilities to her RFC, see Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (citations omitted), and no evidence, aside from Plaintiff's discounted subjective complaints, provides any basis for greater lifting restrictions. As such, the Court finds no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #13] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of August, 2018.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge